UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

IN RE:                                    )
                                          )
Loren Morlock and                         )     Bankruptcy Case No. 05-31880
Jennifer Morlock                          )     Chapter 7
                                          )
            Debtors.                      )
                                          )

## MEMORANDUM AND ORDER

The present matter came before the Court upon the Objection to Claim of Exemptions filed by Michael Wagner, the Chapter 7 trustee ("the trustee"), on November 7, 2005. The trustee objected to Debtors' claimed exemptions of a Wells Fargo savings account which holds the proceeds from the sale of Debtors' Bismarck home ($68,000.00) under N.D.C.C. § 47-18-01 and of a mobile home under N.D.C.C. § 28-22-02(10). Loren and Jennifer Morlock ("Debtors") responded to the trustee's objections by filing an Objection of Debtors to Objection to Claim of Exemption on November 21, 2005. Debtors asked the Court to allow both exemptions. A hearing was held on December 20, 2005. Debtors were represented by attorney Ross Espeseth and the trustee made an appearance. The Court took the matter under advisement and allowed post-hearing briefs to be filed no later than fifteen days after the date of the hearing. Debtors filed a post-hearing brief on January 4, 2006. The trustee did not file an additional brief.

The facts of this matter are not contested.[1] From 1998 until July 29, 2005, Debtors lived at 122 Telstar Drive in Bismarck, North Dakota. While living in Bismarck, Debtors operated two businesses. One business, Dakota Cycling, was located in Bismarck while the other, Dakota

---

[1] In their original brief, Debtors concurred with the facts as set forth in the trustee's brief. Debtors also set forth additional facts which the trustee has not objected to.

Cycling Mountain Bike Adventures, was located in Medora, North Dakota. Employees operated the Medora business while Debtors stayed in Bismarck. In December 2004, Debtors closed their Bismarck business and moved to Mesa, Arizona. Although they kept their house in Bismarck, Debtors lived and worked in Arizona from January 2005 until April 2005, when they returned to Bismarck. Debtors lived in Bismarck for one month before moving to Medora to operate their business.

While in Medora, Debtors lived in a mobile home they had purchased. Mrs. Morlock testified that during the summer months of 2005, Debtors spent 6-10 nights a month in Bismarck at the Telstar address and the rest of their time in the mobile home in Medora. Mrs. Morlock testified that during this time, she and her husband still considered the Telstar address their home. Debtors received mail at the Telstar address and had it forwarded to a post office box in Medora. The Telstar address remained on Debtors' driver's licenses and checking account. All utilities for the Telstar address remained in their name, and they continued to keep their personal property there. In addition, Debtors continue to vote in Bismarck.

Debtors sold their Bismarck home on July 29, 2005. During the last week of July, Debtors removed their personal property from the home and their names were taken off the utilities. Debtors placed the funds received from the sale of the home ($68,000) in a separate account at Wells Fargo. Mrs. Morlock testified that Debtors intend to use these funds for the purchase of another home in either Medora or Phoenix, Arizona. At no time have these funds been commingled with money from other sources. Mrs. Morlock admitted that she and her husband withdrew $2,000.00 from this account. They used $1,000.00 for living expenses and

the other $1,000.00 to purchase a 8'x10' trailer to use in their Medora business. Mrs. Morlock testified that Debtors intended to repay the $2,000.00 that they withdrew.

Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 8, 2005.

Upon the filing of a Chapter 7 petition, a bankruptcy estate is created which constitutes all of the debtor's legal and equitable interests in property. 11 U.S.C. § 541(a)(1). Section 541(a)(1) is broad and encompasses all apparent interests of the debtor. See In re Murphy, 292 B.R. 403, 407 (Bkrtcy. D.N.D. 2003) (internal citations omitted). Exemptions which are available to the debtor are determined on the date of filing. Id.

Under section 522(b)(2)(A) of the Bankruptcy Code, debtors may exempt from the property of the bankruptcy estate any property that is exempt under non-federal bankruptcy law, state law, or local law. Like many states, North Dakota has chosen to "opt out" of the federal exemptions. N.D.C.C. § 28-22-17. Therefore, North Dakota state law is controlling when considering a debtor's claimed exemptions.

In North Dakota, the analysis of a claimed homestead exemption begins with N.D.C.C. § 48-18-01. Section 48-18-01 states:

> The homestead of any person, whether married or unmarried, residing in this state shall consist of the land upon which the claimant resides, and the dwelling house on that land in which the homestead claimant resides, with all its appurtenances, and all other improvements on the land, the total not to exceed eighty thousand dollars in value, over and above liens or encumbrances or both. The homestead shall be exempt from judgment lien and from execution or forced sale, except as otherwise provided in this chapter. In no case shall the homestead embrace different lots or tracts of the land unless they are contiguous.

3

N.D.C.C. § 48-18-01. The purpose of the homestead exemption is to place a designated homestead out of creditors reach while it is occupied as a home. See In re Murphy, 292 B.R. at 407.

For years, the state courts of North Dakota have looked to Larson v. Cole, 33 N.W.2d 325 (1948), when considering a homestead and its abandonment. In that case, the court stated:

> 1. The law does not favor the abandonment of the homestead and the statute must be liberally construed for the protection thereof.
>
> 2. When a homestead status of property has been established, the burden of proving its abandonment, by the clear and convincing preponderance of the evidence, is on the party who alleges such abandonment.
>
> 3. To constitute an abandonment of homestead rights removal from the premises must concur with an intention to discontinue their use as a home.

Larson, 33 N.W.2d at 326-27. This Court, on multiple occasions, has heeded the ruling of the Larson court and has liberally construed the homestead exemption. See In re Murphy, 292 B.R. at 407; In re Lippert, 113 B.R. 576, 578 (Bkrtcy D.N.D. 1990).

The dominant element to consider when deciding whether abandonment has occurred is intent. In re Lippert, 113 B.R. at 578. After a homestead has been created, actual and continuous occupancy of the homestead is not required. "Indeed, it is recognized that neither the fact of removal from the property or the length of time away will defeat an established homestead . . . unless such removal is coupled with the requisite intent." Id.

In the present case, the trustee has failed to prove by the clear and convincing preponderance of the evidence that Debtors intended to abandon their homestead located at 122 Telstar Drive in Bismarck. Although Debtors left their residence and resided in Arizona for four

4

months, their intent was to return to their home. Indeed, upon their return to North Dakota, they resided at the Telstar address for one month before they began splitting their time between Bismarck and Medora where they tended to their business venture. Absent intent, this relocation for a business venture does not relinquish Debtors' rights to claim a homestead exemption in their Telstar address. See In re Murphy, 292 B.R. at 407 (holding that a residence is not lost when one travels for business purposes). In addition, it is reasonable for debtors who are away for an extended period of time to purchase a temporary or second dwelling. However, without intent to abandon, the purchase of an additional dwelling does not destroy the previously established homestead.

Further, the fact that Debtors sold their home prior to the filing of their bankruptcy petition does not impair their ability to claim a homestead exemption in the sale proceeds because N.D.C.C. § 47-18-16 allows the exemption of proceeds from the sale of a homestead. After the sale of their home, Debtors set up a separate account and deposited the sale proceeds, and they have not commingled these funds with money from any other source. It is their stated intention to use the funds to purchase another home in Medora or Phoenix. Although Debtors admit to removing $2,000.00 from this account for reasons other than the purchase of another homestead, they intended to repay the account. Therefore, the Court concludes that the Debtors are entitled to exempt the proceeds from the sale of their homestead under N.D.C.C. § 47-18-16.

Debtors also claimed their mobile home as absolutely exempt under N.D.C.C. § 28-22-02(10) which states that "any housetrailer or mobile home occupied as a residence by the debtor

5

or the debtor's family" is exempt from all process, levy or sale. N.D.C.C. § 28-22-02(10) (emphasis added). In their post-hearing brief, Debtors argue that N.D.C.C. § 28-22-02(10) does not require a mobile home to be the owner's legal residence. Instead of "residence," Debtors refer to the mobile home as their "actual temporary residence," "temporary residence" and "temporary domicile."[2] Regardless of the adjective preceding "residence," or other term Debtors use to describe their mobile home, their claimed exemption must be denied.

Section 54-01-26 of the Century Code sets forth rules for the determination of an individual's residence. N.D.C.C. § 54-01-26. Particular to the Court's analysis in this matter are subsections (3) and (7). Subsection (3) states that " a residence cannot be lost until another is gained," while subsection (7) states that a person's residence can only be changed "by the union of act and intent." N.D.C.C. § 54-01-26(3)(7).

Debtors never intended to change their residence from Bismarck to Medora. While several facts support this conclusion, e.g., Debtors kept their Bismarck address on their drivers' licenses and checking account, received mail in Bismarck and had it forwarded to a post office box in Medora, and continued to vote in Bismarck, the Court needs to look no further than Mrs. Morlock's testimony. See State v. Sathre, 258 N.W. 558, 563 (N.D. 1935) (holding that while not conclusive, voting in a particular location is strong evidence of residency). Mrs. Morlock testified Debtors had no intention of making the mobile home their residence. Instead, it was their intention to use the proceeds from the sale of the Telstar residence to purchase another

---

[2] Attorney Espeseth changes back and forth between the term "residence" and "domicile" in his post-hearing brief. The Supreme Court of North Dakota has ruled that the terms "residence" and "domicile" as used by the legislature are synonymous and when discussing both terms, this Court will use "residence." Northwestern Mortgage and Security Co. v. Noel Const. Co., 300 N.W. 28 (1941).

6

home in either Medora or Phoenix.  Further, Mrs. Morlock testified that the mobile home is not winterized and therefore cannot be inhabited during the winter months.  See In re Murphy, 292 B.R. at 408 (stating that residency contemplates some degree of permanency).  At the time of Debtors' filing, they had lived in the mobile home for only a month-and-a-half and have since returned to Arizona.  Without intent, Debtors cannot establish their mobile home as a residence. Mittelstadt v. Bender, 210 N.W.2d 89, 93 (N.D. 1973) (holding that for an actual change of residence to occur, action must be coupled with intent).

Because Debtors did not intend to change their residence, their prior residence in Bismarck was not lost.  N.D.C.C. § 54-01-25 (3); Mittelstadt v. Bender, 210 N.W.2d at 92-93 (ruling that where individuals left one city and moved to another on a temporary basis, residency was not changed to the new city due to lack of intent).

Accordingly, the Objection to Claim of Exemptions filed by Trustee Wagner is sustained in part and overruled in part.  Debtors are allowed to claim as exempt the homestead funds which they currently hold in a separate Wells Fargo account under N.D.C.C.§ 47-18-16.  Debtors claimed exemption in their mobile home is hereby denied, and Debtors are required to turn over that property to the trustee within **fifteen (15) days** from the date of this Order.

**SO ORDERED.**

Dated this 18th day of January, 2006.

WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT

7